# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s):** 10-2560

**Caption [use short title]**

**Motion for:** Leave to file a post argument letter as amicus

Feimei Li and Duo Cen v. Renaud, et al

**Set forth below precise, complete statement of relief sought:**

Leave to file a post argument letter as amicus

**MOVING PARTY:** proposed amicus
- [ ] Plaintiff
- [ ] Defendant
- [ ] Appellant/Petitioner
- [ ] Appellee/Respondent

**OPPOSING PARTY:** David Renaud, et al

**MOVING ATTORNEY:** Nancy Morawetz

**OPPOSING ATTORNEY:** David Bober, Asst. United States Attny

[name of attorney, with firm, address, phone number and e-mail]

Washington Square Legal Services
245 Sullivan Street
New York, New York 10012
nancy.morawetz@nyu.edu

86 Chambers Street 3rd floor
New York, New York 10007
(212) 637-2718
david.bober@usdoj.gov

Scott Bratton
Margaert Wong & Assoc
3150 Chester Ave.
Cleveland, Ohio 44114
bratton@imwong.com

**Court-Judge/Agency appealed from:** United States District Court for the Eastern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [x] Yes [ ] No (explain): _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [ ] No
Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
- [x] Unopposed [ ] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
- [ ] Yes [x] No [ ] Don't Know

Is oral argument on motion requested? [ ] Yes [x] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [x] Yes [ ] No If yes, enter date: May 12, 2011

**Signature of Moving Attorney:** _/s/_ **Date:** 5/12/2011  Has service been effected? [ ] Yes [ ] No [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____  By: _____

Form T-1080

United States Court of Appeals
for the Second Circuit
------------------------------------------------------------x
Feimei Li, Duo Cen                             No. 10-2560

v.

**Declaration in Support of Motion
to File a Post-Argument Letter as Amicus
Curiae**

Danile Renaud, et al.
------------------------------------------------------------x

Nancy Morawetz, hereby declares under penalty of perjury that:

1. I am the attorney for Mohammed Golam Azam, who was recently granted adjustment by an immigration judge based on the Child Status Protection Act. Mr. Azam's case raises issues that are distinct from the issues presented in the above captioned case. Nonetheless, should some of the arguments presented by the government in this case be adopted by the Court, they could constrain the authority of the Board of Immigration Appeals when it hears the appeal in Mr. Azam's case. I submit this motion for leave to file a post-argument letter so that the Court is aware of the broader implications of some of the government's arguments.

2. I did not become aware of the argument in this case until approximately one week ago. Because of the related nature of the issues, I attended the oral argument. This request for leave to file a post argument letter as amicus is based on listening to the arguments and questions from the bench. A copy of the proposed letter is attached as Exhibit A.

3. As the Court noted at argument, this case raises questions about proper application of the *Chevron* framework to the BIA's decision in *Matter of Wang*, 25 I & N Dec. 28 (2009). *Matter of Wang*, like the *Li* case, arose in the context of a family petition. Many of the conclusions of *Matter of Wang* are based solely on the family petition context and do not consider the context of employment based visas. As appellants and *amici* have argued, the BIA's failure to account for how the statute operates in the employment based context, and its failure to consider the relevant statutory and regulatory provisions on retention of priority dates and conversion of petitions in the employment context, raises doubts about the validity of the *Matter of Wang* opinion. Mr. Azam's case demonstrates that such considerations are essential to a proper reading of the statute and that the Board's analysis was incomplete in this respect. In addition, the fact that *Matter of Wang* arose in the family based context means that the BIA has not considered the proper reading of the statute the context of employment based petitions. Because these issues

1

are currently the subject of litigation before the agency, we urge the Court to leave these questions to further agency resolution.

4. In particular, the government's arguments about visa category delays is specific to the family context. In the employment context, there are generally no such delays. Similarly, the government's arguments about the agency's use of the term "automatic conversion" is drawn from the family petition context. The government does not provide any argument about what this term would mean in the context of derivative children and employment visas.

5. The questions about visa delay and conversion is presented in a wholly different way in employment based petitions, which is the basis of the adjustment in the case of my client Mohammed Azam. In the typical employment petition, there can be delays at the stage of obtaining labor certification, but the visa numbers are almost always current. In other words, administrative processing delays, rather than visa allocation, is the reason why children age out. In Mr. Azam's case, the immigration judge concluded that, consistent with *Matter of Wang*, Mr. Azam could obtain relief under (h)(3) to account for processing delays in his father's case. The government has filed an appeal, but this case has not yet been heard by the BIA. A copy of the immigration judge decision is attached to our proposed letter.

6. At the argument in *Li*, the government repeatedly referred to the difference between family based and employment cases. But because neither *Li* nor *Matter of Wang* concerned an employment petition, neither case squarely presents the implications of the BIA's reading of "automatic conversion" in the employment context.

7. In the government's appeal to the BIA in the Azam case, we intend to argue that *Matter of Wang* should not be read as limiting the possible meaning of automatic conversion for employment cases. If, however, this Court adopts the government's argument that *Matter of Wang* delimits the only categories of petitions that can constitute "automatic conversion," it may constrain the BIA's understanding of its jurisdiction to hear arguments about the proper reading of these terms in the employment context because it may feel bound by the language of any opinion of this Court.

8. As we argued to the immigration judge in the Azam case, it is very clear from the legislative history – the very source on which the BIA relied in *Wang* – that Congress intended to provide benefits to children who age out in the employment visa context. That is especially clear when one considers that Congress passed a special law in 2001 to allow immigrants in the United States to seek employment visas and to retain the priority dates set by the date of the original labor certification application. Our client came to the

United States at the age of 9 and has been educated in this country. His father's employer filed for labor certification in 2001, and our client's father, mother and sister have adjusted to Lawful Permanent Resident status on the basis of that process. Our client's only other immediate family member is a sister who is a United States citizen. Although our client's facts are not before this Court, we urge the Court to issue a decision that leaves his situation – that of a child who aged out solely as a result of processing delays for labor certification and employment visas – to be determined in the first instance by the agency.

9. We therefore urge the Court to be clear that its opinion in the *Li* case is directed to the type of case presented: namely one in which a child ages out during the pendency of a family based petition.

Dated: New York, New York

May 12, 2011

/s/

Nancy Morawetz

# Exhibit A

# WASHINGTON SQUARE LEGAL SERVICES, INC.
245 SULLIVAN STREET, 5TH FLOOR
NEW YORK, NEW YORK 10012
TEL: 212-998-6624
FAX: 212-995-4031

NANCY MORAWETZ
ALINA DAS
*Supervising Attorneys*

May 12, 2011

The Honorable Rosemary S. Pooler
The Honorable Barrington D. Parker
The Honorable Ralph K. Winter
United States Court of Appeals for the Second Circuit
500 Pearl Street
New York, New York 10007

Re: Li v. Renaud, No. 10-2520

Dear Judges Pooler, Parker and Winter:

I am writing to bring to the Court's attention a pending case before the Board of Immigration Appeals that bears on the implications of *Matter of Wang*, 25 I & N Dec. 28 (2009) for derivative children who age out during the employment petitioning process. I am the attorney for Mohammed Golam Azam, who was recently granted adjustment by an immigration judge based on the Child Status Protection Act. Mr. Azam's case raises issues that are distinct from the issues presented in the above captioned case. Nonetheless, should some of the arguments presented by the government in this case be adopted by the Court, they could constrain the authority of the Board of Immigration Appeals when it hears the government's appeal in Mr. Azam's case. I submit this post-argument letter so that the Court is aware of the broader implications of some of the government's arguments.

I did not become aware of the argument in this case until approximately one week ago. Because of the related nature of the issues, I attended the oral argument. I submit this letter as amicus counsel on behalf of Mr. Azam because his case is relevant to some of the arguments presented and questions from the bench.

As the Court noted at argument, this case raises questions about proper application of the *Chevron* framework to the BIA's decision in *Matter of Wang*. *Matter of Wang*, like the *Li* case, arose in the context of a family petition. Many of the conclusions of *Matter of Wang* are based solely on the family petition context and do not consider the context of employment based visas. As appellants and *amici* have argued, the BIA's failure to account for how the statute operates in the employment based context, and its failure to consider the relevant statutory and regulatory provisions on retention of priority dates and conversion of petitions in the employment context,

raises doubts about the validity of the *Matter of Wang* opinion. Mr. Azam's case demonstrates that such considerations are essential to a proper reading of the statute and that the Board's analysis was incomplete in this respect. In addition, the fact that *Matter of Wang* arose in the family based context means that the BIA has not considered the proper reading of the statute in the context of employment based petitions. Because these issues are currently the subject of litigation before the agency, we urge the Court to leave these questions to further agency resolution.

In particular, the government's arguments about visa category delays is specific to the family context. In the employment context, there are generally no such delays. Similarly, the government's arguments about the agency's use of the term "automatic conversion" is drawn from the family petition context. The government does not provide any argument about what this term would mean in the context of derivative children and employment visas.

The questions about visa delay and conversion is presented in a wholly different way in employment based petitions, which is the basis of the adjustment in the case of my client Mohammed Azam. In the typical employment petition, there can be delays at the stage of obtaining labor certification, but the visa numbers are almost always current. In other words, administrative processing delays, rather than visa allocation, is the reason why children age out. In Mr. Azam's case, the immigration judge concluded that, consistent with *Matter of Wang*, Mr. Azam could obtain relief under (h)(3) to account for processing delays in his father's case. A copy of his decision is attached. The government has filed an appeal, but this case has not yet been heard by the BIA.

At the argument in *Li*, the government repeatedly referred to the difference between family based and employment cases. But because neither *Li* nor *Matter of Wang* concerned an employment petition, neither case squarely presents the implications of the BIA's reading of "automatic conversion" in the employment context.

In the government's appeal to the BIA in the Azam case, we intend to argue that *Matter of Wang* should not be read as limiting the possible meaning of automatic conversion for employment cases. If, however, this Court adopts the government's argument that *Matter of Wang* delimits the only categories of petitions that can constitute "automatic conversion," it may constrain the BIA's understanding of its jurisdiction to hear arguments about the proper reading of these terms

in the employment context because it may feel bound by the language of any opinion of this Court.

As we argued to the immigration judge in the Azam case, it is very clear from the legislative history – the very source on which the BIA relied in *Wang* – that Congress intended to provide benefits to children who age out in the employment visa context. That is especially clear when one considers that Congress passed a special law in 2001 to allow immigrants in the United States to seek employment visas and to retain the priority dates set by the date of the original labor certification application. Our client came to the United States at the age of 9 and has been educated in this country. His father's employer filed for labor certification in 2001, and our client's father, mother and sister have adjusted to Lawful Permanent Resident status on the basis of that process. Our client's only other immediate family member is a sister who is a United States citizen. Although our client's facts are not before this Court, we urge the Court to issue a decision that leaves his situation – that of a child who aged out solely as a result of processing delays for labor certification and employment visas – to be determined in the first instance by the agency.

We therefore urge the Court to be clear that its opinion in the *Li* case is directed to the type of case presented: namely one in which a child ages out during the pendency of a family based petition.

Sincerely,

Nancy Morawetz
Supervising Attorney
Washington Square Legal Services

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
26 FEDERAL PLAZA
NEW YORK, NEW YORK

File No.: A 96-426-070

In the Matter of:

**Azam, Mohammed Golam**                   :   IN REMOVAL PROCEEDINGS

**RESPONDENT**                             :

| CHARGE: | INA § 237(a)(1)(B) | Visa overstay |
|---|---|---|
| APPLICATION: | INA § 245(i) | Adjustment of status |

ON BEHALF OF RESPONDENT
Nancy Morawetz, Esq.
Roopal Patel (Law Student)
Benjamin Locke (Law Student)
Washington Square Legal Services
245 Sullivan Street
New York, New York 10012

ON BEHALF OF THE DEPARTMENT
Khalilah Taylor, Esq.
Assistant Chief Counsel
26 Federal Plaza
New York, New York 10278

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY

Mohammed Golam Azam ("Respondent") is a native and citizen of Bangladesh. He was admitted to the United States ("U.S.") at New York, New York, on or about September 9, 1993, as a B-2 nonimmigrant visitor for pleasure with authorization to remain until March 8, 1994. [Exh. 1.] He remained in the U.S. beyond that date without authorization from the Immigration and Naturalization Service, now the Department of Homeland Security ("DHS" or "Department"). [Exh. 1.]

On April 17, 2003, Respondent went to 26 Federal Plaza, in lower Manhattan, to register with DHS, as required by the National Security Entry-Exit Registration System ("NSEERS" or "Special Registration"). That same day, Respondent was served with a Form I-862, Notice to Appear ("NTA"), charging him with removability under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA" or "Act"), in that after admission as a nonimmigrant, he remained in the U.S. for a time longer than permitted. [Exh. 1.] On February 27, 2004, Respondent, through

1

counsel, admitted the truth of the factual allegations contained in the NTA and conceded removability as charged. Accordingly, removability was established by clear and convincing evidence. *See* 8 C.F.R. §§ 1240.8, 1240.10. The Court designated Bangladesh as the country of removal. *See* INA § 241(b)(2)(D).

On September 20, 2005, Respondent filed a motion to terminate proceedings, and, in the alternative, to suppress the evidence gathered in connection with his registration. His motion argued that DHS's decision to issue the NTA in his case was based upon information gained through violations of his regulatory and constitutional rights. On October 20, 2005, Respondent testified in support of the motion to terminate proceedings. Also on that date, the Court heard testimony from DHS Special Agent Patrick Gadde.

On March 22, 2007, the Court issued a written decision granting Respondent's motion to terminate after finding termination the most appropriate judicial remedy in the instant case in light of violations committed by the Department. The Department subsequently appealed the Court's decision to the Board of Immigration Appeals ("BIA" or "Board"). In addition to requesting that the Court's decision be sustained, Respondent filed a motion to remand with the Board on October 29, 2008, based on the Second Circuit's decision in *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008), which laid out new requirements for cases involving alleged regulatory violations.

On March 18, 2009, the Board sustained the Department's appeal, vacated the Court's March 22, 2007 decision, and remanded the case to the undersigned for further proceedings consistent with *Matter of Hernandez*, 21 I&N Dec. 224 (BIA 1996), wherein the Board held that an Immigration Judge, where possible, can and should take corrective action short of termination of proceedings when there has been a regulatory violation. The Board denied Respondent's motion to remand on account of Respondent's failure to identify "any disagreement or controversy regarding [the Court's] findings of fact or how the application of…*Rajah*…would require additional fact finding." *See* 8 C.F.R. § 1003.1(d)(3)(i).

Respondent appeared before the Court for a master calendar hearing on October 9, 2009, and indicated he intended to file for adjustment of status. In the alternative, he urged the Court to take measures to restore his eligibility for cancellation of removal pursuant to INA 240A(b)(1).[1] On May 24, 2010, he returned to Court where he filed a Form I-485, Application to Register Permanent Residence or Adjust Status, based upon his status as a derivative beneficiary of his father's approved Labor Certification and Form I-140. [Exh. 2A.] He further requested, through counsel, that all arguments made in support of cancellation of removal be preserved should his application for adjustment of status be denied. The Court concludes that such arguments are unnecessary in the first instance, as it finds Respondent eligible for adjustment of status pursuant to INA § 245(i).

---

[1] Respondent argues that his eligibility for cancellation be restored in the event he is unable to adjust status. He urges the Court to consider the following remedies: 1) re-service of the NTA; 2) a finding that the "stop-time" rule not be triggered in light of alleged regulatory violations; or 3) *nunc pro tunc* restoration of Respondent's prima facie eligibility for cancellation of removal. At this time, the Court makes no findings as to any of Respondent's arguments, yet nonetheless preserves them for the record.

## II. EXHIBITS

The following documents were marked as exhibits and included in the original record of proceedings:

**Exhibit 1:** Form I-862, Notice to Appear, served April 17, 2003;

**Exhibit 2:** Respondent's documentary submission, dated October 20, 2005:
- **Exhibit 2.1:** NSEERS questionnaire completed by Respondent;
- **Exhibit 2.2:** ENFORCE print-out for Respondent;
- **Exhibit 2.3:** Form FD-249 for Respondent;
- **Exhibit 2.4:** Labor Certification application of Respondent's father, filed April 26, 2001;
- **Exhibit 2.5:** Respondent's academic enrollment documents;
- **Exhibit 2.6:** Form I-213, Record of Deportable/Inadmissible Alien and Form I-831, Continuation Page for Form I-213;
- **Exhibit 2.7:** Form I-265, Notice to Appear, Bond, and Custody Processing Sheet and Form I-831, (Continuation Page for Form I-213) for the Respondent, dated April 17, 2003;
- **Exhibit 2.8:** Computer database print-out for Respondent, dated April 18, 2003;

**Exhibit 3:** Letter dated February 8, 2005 from the New York State Department of Labor, confirming Labor Certification filing for Respondent's father, Mohammed Golan Hossain on April 30, 2001;

**Exhibit 4:** Computer print-out entitled "Immigrant Information Sheet;"

**Exhibit 5:** Copy of Respondent's Bangladeshi passport;

**Exhibit 6:** Respondent's documentary submission, dated January 30, 2006:
- **Exhibit 6.6:** Affidavit of Moushumi Khan, dated December 12, 2005;
- **Exhibit 6.7:** Notarized copy of birth certificate for Sanjida Hossain, issued March 13, 1997 by the New York City Department of Health;
- **Exhibit 6.8:** Letter from Edward J. McElroy, New York District Director, Immigration and Naturalization Service;
- **Exhibit 6.9:** Letter from Doris Meissner, Commissioner, Immigration and Naturalization Service.

Subsequent to the Board remand, the following documents were marked into evidence:

**Exhibit 2A:** Form I-485, Application to Register Permanent Residence or Adjust Status, filed May 24, 2010;

3

| | |
|---|---|
| **Group Exhibit 3A:** | Respondent's documentary submission, dated May 24, 2010 (Tabs A-CC); |
| **Tab A:** | [Not assigned]; |
| **Tab B:** | Amended Form G-325A, Biographic Information, filed December 3, 2009; |
| **Tab C:** | Amended Supplement A to Form I-485, Adjustment of Status under INA § 245(i), filed December 3, 2009; |
| **Tab D:** | USCIS receipt notice for Respondent's amended adjustment forms; |
| **Tab E:** | Form I-485, Application to Register Permanent Residence or Adjust Status, filed August 24, 2006; |
| **Tab F:** | Form G-325A, Biographic Information, filed August 11, 2006; |
| **Tab G:** | Supplement A to Form I-485, Adjustment of Status under INA § 245(i), filed August 24, 2006; |
| **Tab H:** | USCIS receipt notice for Respondent's original adjustment forms; |
| **Tab I:** | Respondent's birth certificate; |
| **Tab J:** | Respondent's parents' marriage certificate with translation; |
| **Tab K:** | USCIS biometrics appointment notice, dated January 24, 2010; |
| **Tab L:** | Proof of Respondent's Selective Service registration, dated July 15, 2005; |
| **Tab M:** | Respondent's diploma from Monroe College; |
| **Tab N:** | Respondent's diploma from Walton High School; |
| **Tab O:** | Respondent's junior high school diploma from Community School District 10; |
| **Tab P:** | Respondent's employment authorization; |
| **Tab Q:** | Letter from Respondent's employer; |
| **Tab R:** | Respondent's 2009 tax return and application for an extension; |
| **Tab S:** | Respondent's amended 2008 tax return; |
| **Tab T:** | Respondent's original 2008 tax return; |
| **Tab U:** | Respondent's amended 2007 tax return; |
| **Tab V:** | Respondent's father's Form I-140 approval notice, dated June 17, 2007, showing receipt date of October 18, 2006; |
| **Tab W:** | Respondent's father's Labor Certification application and approval notice, dated July 19, 2006, and showing priority date of April 30, 2001; |
| **Tab X:** | Letter from Respondent's father's employer, confirming continued employment; |
| **Tab Y:** | Form I-130, Petition for Alien Relative, filed October 12, 2009; |
| **Tab Z:** | USCIS receipt notice for Form I-130 and payment of filing fee; |
| **Tab AA:** | USCIS notice of transfer for Form I-130; |
| **Tab BB:** | Copies of green cards of Respondent's father, mother, and sister; |
| **Tab CC:** | Letters in support of Respondent's good moral character; |
| **Exhibit 4A:** | Form I-693, Report of Medical Examination and Vaccination Record, conducted May 4, 2010. |

4

## III. TESTIMONY

The Court assumes both parties' familiarity with all prior testimony in this case. As no new testimony was provided following the Board remand, and as Respondent elected to rest on the evidence presented, the transcript and prior findings of the Court are hereby incorporated by reference into this decision.

## IV. LEGAL STANDARD

### A. The LIFE Act

The Legal Immigration Family Equity Act ("LIFE Act") permits adjustment of status for certain aliens who would otherwise be ineligible to adjust their status under INA § 245(a). LIFE Act, Pub. L. No. 106-553 (Dec. 21, 2000), and the LIFE Act Amendments, Pub. L. No. 106-554 (Dec. 21, 2000). Under INA § 245(i), adjustment of status was available[2] to alien crewmen, aliens continuing or accepting unauthorized employment, aliens admitted in transit without visa, and aliens who entered without inspection. INA § 245(i)(1)(A)(i)-(ii). This law sunset on January 14, 1998, but was revived under the LIFE Act, which extended INA § 245(i) to April 30, 2001.

To seek adjustment under INA § 245(i), the alien must pay a penalty (currently $1,000) and file a Form I-485 with Supplement A. 8 C.F.R. § 1245.2(a)(3)(iii). To be grandfathered under INA § 245(i), the alien must be the beneficiary of either a labor certification under INA § 212(a)(5)(A) or a petition under INA § 204 (including I-140, I-130, I-360, I-526) that was filed[3] on or before April 30, 2001, and if it was filed after January 14, 1998, the applicant must have been physically present in the U.S. on December 21, 2000. INA § 245(i); 8 C.F.R. § 1245.10; LIFE Act § 1502(a)(1)(B), Pub. L. No. 106-553. Upon receipt of the application and the required sum, the alien's status may be adjusted to that of lawful permanent resident if 1) the alien is eligible to receive an immigrant visa; 2) the alien is admissible to the U.S., and 3) an immigrant visa is immediately available. INA § 245(i)(2)(A) and (B).

### B. Derivative beneficiaries and the Child Status Protection Act

A beneficiary's spouse or child, if not otherwise entitled to an immigrant status, shall be accorded the same status and consideration as the primary beneficiary, if accompanying or following to join that individual. *See* INA § 203(d). The Child Status Protection Act ("CSPA") allows the derivative beneficiary of an immediate relative visa petition to retain his status as a

---

[2] Aliens who are otherwise eligible to adjust status under INA § 245(i) are not subject to the unauthorized employment restrictions of INA § 245(c) and the exception for such employment in INA § 245(k) that apply to applications for adjustment of status under INA § 245(a). *Matter of Alania-Martin*, 25 I&N Dec. 231 (BIA 2010).

[3] A beneficiary can adjust status based on an immigrant visa petition or labor certification that was approved after April 30, 2001, so long as his petition or application for certification was "properly filed" (postmarked or received by the Department) on or before April 30, 2001, and was "approvable when filed." 8 C.F.R. § 1245.10(a)(2).

5

"child"[4] after he or she turns twenty-one. For purposes of the CSPA, INA § 203(h)(1) provides rules for determining whether certain aliens are children. The derivative beneficiary's "age" is calculated by subtracting the number of years and days the primary beneficiary's application was pending from the derivative beneficiary's age on the date his or her parent's immigration visa number becomes available. *Id.* The CSPA further provides that even if a derivative beneficiary is found to have "aged out" under INA § 203(h)(1), the derivative beneficiary should nonetheless retain the original priority date issued upon receipt of the beneficiary's original petition. *See* INA § 203(h)(3).

## V. ANALYSIS

### A. Mr. Hossain's adjustment of status pursuant to the LIFE Act

At the outset, the Court will provide a brief summary based upon the evidence of record of Respondent's father's adjustment pursuant to the LIFE Act. Where a claim, such as this one, depends in the first instance upon the validity of the primary beneficiary's adjustment of status, it is thus imperative to understand how the primary beneficiary became a lawful permanent resident.

On April 30, 2001, Naw Inc. ("Naw") filed Form ETA 750 for labor certification on behalf of Respondent's father, Mohammed Hossain ("Mr. Hossain"). [Grp. Exh. 3A, Tab W.] On July 19, 2006, the Department of Labor ("DOL") certified the ETA 750 for submission to the United States Citizenship and Immigration Services ("USCIS") as required by 20 C.F.R. § 656 and INA § 203(b)(3)(C). *Id.*

On October 18, 2006, Naw filed Form I-140, Petition for an Alien Worker, on behalf of Mr. Hossain; the Form I-140 was approved on June 18, 2007, showing a priority date for Mr. Hossain of April 30, 2001. [Grp. Exh. 3A, Tab V.] As the beneficiary of a labor certification, the application for which was properly filed on or before April 30, 2001, and an approved Form I-140, Mr. Hossain adjusted his status to that of a lawful permanent resident on June 9, 2008. [Grp. Exh. 3, Tab BB.] On October 12, 2009, he filed a Form I-130, Petition for Alien Relative, on behalf of Respondent. [Grp. Exh. 3, Tab Y.]

### B. Respondent's eligibility for adjustment of status

The central issue in the instant case is whether Respondent is currently eligible to adjust his status to that of lawful permanent resident. He presents two distinct arguments in favor of adjustment. First, he argues that pursuant to INA § 203(h)(1), he is eligible to adjust status as a

---

[4] Pursuant to INA § 101(b)(1):
    As used in titles I and II-
    (1) The term "child" means an unmarried person under twenty-one years of age...

6

child by reducing his age on the date a visa number became available to his father by the amount of days the ETA 750 was pending, effectively rendering him a minor for purposes of the CSPA. Second, he maintains that even if the Court finds that he is no longer a child under INA § 203(h)(1), he should be allowed to convert his petition as a derivative beneficiary of Mr. Hossain's employment visa to the application of an unmarried son of a lawful permanent resident pursuant to INA § 203(h)(3). He further argues that his father's original priority date of April 30, 2001 should be retained following the conversion, thereby providing him with an immediately available visa number.[5]

The government counters that Respondent has in fact "aged-out" of his eligibility as a derivative beneficiary, and that, pursuant to the Board's decision in *Matter of Wang*, 25 I&N Dec. 28 (BIA 2009), Respondent may not automatically convert the priority date from his father's employment-based petition to the current second-preference family-based petition. Upon careful review of the statutory language in question, as well as the evidence of record, the Court finds that Respondent is no longer a child for purposes of the CSPA. However, it finds the facts of this case to be substantially different from the facts presented in *Wang*. Accordingly, the Court finds that Respondent retains a priority date of April 30, 2001, and will therefore grant his application for adjustment of status pursuant to INA § 245(i).

### i. *Respondent is no longer a child under INA § 203(h)(1)*

The Court finds Respondent is no longer eligible to adjust as a child after applying the age calculation laid out in INA § 203(h)(1). INA § 203(h)(1) reads:

IN GENERAL.-- For purposes of subsections (a)(2)(A) and (d), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 101(b)(1) shall be made using--
    (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by
    (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

INA § 203(h)(1). In the instant case, Respondent turned twenty-one on May 28, 2005. *See* [Exh. 2A.] Thus, on the day Mr. Hossain's Form I-140 was approved—June 17, 2007—Respondent was twenty-three years, twenty days old, and no longer a child for immigration purposes. *See* INA § 203(h)(1)(A); *see also* [Grp. Exh. 3, Tab V.] However, due to the safeguards provided by

---

[5] The Court takes judicial notice of the most recent Visa Bulletin pursuant to its authority under *Matter of S-M-J-*, 21 I&N Dec. 722, 729 (BIA 1997) (*rev'd on other grounds*). The Visa Bulletin for February 2011 reports immediately available visas for Family Preference 2B applicants, such as Respondent, with priority dates of April 15, 2003 or earlier. U.S. Dep't of State Visa Bulletin, Vol. IX, No. 29 (February 2011).

the CSPA, Respondent's actual age on the date the Form I-140 was approved must be reduced under INA §203(h)(1)(B) by the number of days the petition was pending. Naw filed the employment petition for Mr. Hossain on October 18, 2006, resulting in a period of 243 days during which the Form I-140 was pending. Therefore, Respondent's "age" under the CSPA equals twenty-three years, twenty days, minus the 242 day period of pendency, resulting in CSPA age of twenty-two years, 143 days—no longer a child.

Respondent argues that the period of pendency should be calculated using the amount of time the labor certification was pending, rather than the Form I-140, resulting in a figure of six years, forty-nine days,[6] and placing him well within the statutory definition of a child in INA § 101(b)(1). The Court disagrees. INA § 203(h)(1)(B) specifically refers to "the period during which the applicable petition described in paragraph (2) [of INA § 203(h)] was pending." The petitions described in INA § 203(h)(2)(B), which relates to derivative beneficiaries, refer only to petitions "filed under *section 204* for classification of the alien's parent under *subsection (a), (b), or (c)*." INA § 203(h)(2)(B) (emphasis added). Subsections (a), (b), and (c) designate the three available categories of immigrant visas: Family, Employment, and Diversity visas. While labor certification is listed as a requirement within the subsection (b) visa category, it is not itself a type of *immigrant visa*. As Employment visas are listed alongside Family and Diversity visas as one of the categories of petitions under INA § 204, a plain language reading of INA § 203(h)(2)(B) would indicate that petitions refer to the type of petition required to obtain each of these three types of visas, namely Form I-130, Form I-140, or entry into the annual Diversity Lottery. For this reason, the Court finds Respondent's calculation improper, and upholds an age calculation based upon the filing and approval of the Form I-140. Consequently, the Court finds that Respondent is no longer a child for purposes of derivative eligibility for adjustment of status.

### ii. *Respondent is eligible to adjust status under INA § 203(h)(3)*

While Respondent can no longer be considered a child under INA § 203(h)(1), the Court finds that he nonetheless remains eligible for adjustment of status. Under INA § 203(h)(3), Respondent's petition as a derivative beneficiary of Mr. Hossain's employment visa may be converted to that of an unmarried son of a lawful permanent resident with a priority date of April 30, 2001.

In *Matter of Wang*, the parties' disagreement turned on the question of exactly which petitions qualified for automatic conversion and retention of priority dates under INA § 203(h)(3). INA § 203(h)(3), a subsection of the statute dealing with aliens who are no longer children, states that "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition," providing what appears to be yet another level of protection for delayed processing. *See* INA § 203(h)(3). The respondent in *Wang* had been the primary beneficiary of a fourth

---

[6] Upon undertaking Respondent's proposed calculation, the Court arrived at a time of pendency equaling six years, forty-seven days, as opposed to the six year, forty-nine day figure arrived at by Respondent. However, the tiny discrepancy between the two calculations is a moot point, as the Court finds it improper to subtract the time the labor certification was pending. For reasons explained above, the Court will only consider the pendency of the Form I-140 to determine Respondent's age under the CSPA.

8

preference family-based visa petition, filed on his behalf by his U.S. citizen sister. At the time his sister filed for him, the primary beneficiary named his then-child daughter as a derivative beneficiary. *Wang*, 25 I&N Dec. at 29. When the primary beneficiary's priority date finally became current, his daughter was no longer a child. He filed a second preference family-based visa petition on her behalf, and requested that his original priority date be retained. *Id.* The director reviewed and approved the second preference visa petition, but concluded that the CSPA did not apply where the second petition was not filed by the same petitioner who filed in the first instance, and certified the decision to the Board for clarification. *Id.* at 30.

The Board noted that "the CSPA was essentially enacted to provide relief to children who might 'age out' of their beneficiary status because of *administrative delays* in visa processing or adjustment application adjudication." *Id.* at 31. (emphasis added). However, in upholding the director's decision, the Board distinguished specifically between what it described as "administrative processing delays" and waiting for one's priority date to become current—a process that essentially requires standing in a virtual line to enter the country:

> The historical record regarding the CSPA contains nothing that is contrary to, or reflects any disagreement with, the noted intent of legislators to have the CSPA address the issue of children aging out of visa availability as a result of administrative processing delays, without cutting in line ahead of others awaiting visas in other preference categories. While the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence that it was intended to address delays resulting from visa allocation issues, such as the long wait associated with priority dates.

*Id.* at 37-38. According to the Board's reasoning, allowing the respondent's daughter to retain her original priority date where a new petitioner had filed a second petition on her behalf would be akin to cutting in line ahead of other people who had patiently waited for their priority dates to become current. *Id.* at 39.

In the instant case, the Department relies upon *Wang* to argue that Respondent should not be allowed to retain his original April 30, 2001 priority date. DHS points out the existence of two separate and distinct petitioners in the current scenario, the first being Mr. Hossain's employer, Naw, in the employment-based context, and the second Mr. Hossain himself, in the family-based context. While not disputing Mr. Hossain's right to petition for his son, the government argues that Respondent cannot retain the original priority date, and is therefore currently ineligible for adjustment of status based on the second preference family-based petition filed on his behalf on October 12, 2009.

The Court finds the Department's reasoning unconvincing. The legislative history of the CSPA as described in *Wang* makes clear that lawmakers intended the act to remedy "administrative processing delays," rather than "delays resulting in visa allocation issues." In *Wang*, where, in fact, the respondent's daughter simply "aged-out" while waiting in line for her priority number to become current, there was no identifiable cause for such a delay other than the large number of individuals who wished to enter this country and the statutorily mandated yearly

9

limits on who could be allowed in. However, the instant case should be easily distinguished from *Wang*, not only because it pertains to the allocation of visas in the employment-based, rather than the family-based context, but also because it is arguably an emblematic case in which "administrative processing delays" directly resulted in Respondent losing his eligibility as a derivative beneficiary. Naw filed Form ETA 750 on behalf of Mr. Hossain on April 30, 2001, when Respondent was sixteen years old. Over five years later, the ETA 750 was finally approved by a certifying officer at the Philadelphia Backlog Center. [Grp. Exh. 3A, Tab. W.] The provenance of the letter, as well as the lengthy processing time makes eminently clear the extraordinary administrative delays that occurred in this case—the exact sort of delays the CSPA was designed to remedy.

## VI. CONCLUSION

The Court finds Respondent to no longer be a child for immigration purposes, as Respondent has aged out of derivative eligibility according to the rule laid out in INA § 203(h)(1). However, the Court finds INA § 203(h)(3)—a subsection added to the Act as a direct result of the promulgation of the CSPA—to apply to Respondent's case. Accordingly, Respondent's petition as a derivative beneficiary of his father's employment-based petition converts to a second preference family-based petition retaining the original April 30, 2001 priority date. In light of the fact that Respondent has an immediately available visa number, *see* note 4, *supra*, and that he is admissible to the United States, the Court will grant his application for adjustment of status pursuant to INA § 245(i).

### ORDERS

**IT IS HEREBY ORDERED** that Respondent's application for adjustment of status pursuant to INA § 245(i) be **GRANTED**.

**IT IS FURTHER ORDERED** that these proceedings are **TERMINATED**.

Date FEB 16, 2011

Gabriel C. Videla
U.S. Immigration Judge

10

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2011, I delivered a copy of the Leave to File a Post Argument Letter as Amicus Curiae to:

David Bober
Assistant United States Attorney
86 Chambers Street 3rd floor
New York, NY 10014

      and

Scott Bratton
Margaret Wong & Associates
3150 Chester Ave.
Cleveland, Ohio 44114

Via UPS Overnight Delivery.

*Noelia Rodriguez*
Noelia Rodriguez
Legal Secretary

Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, NY 10012

212.998.6459